UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY GENE WILLARD, JR., <br><br>　　　　　Plaintiff, <br><br>　v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>　　　　　Defendant. | Case No. 1:24-cv-01101-EPG <br><br> FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT <br><br>(ECF Nos. 1, 13). |

　　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

　　　　Plaintiff argues as follows: "The ALJ failed to properly consider the opinion of the medical expert, Darius Ghazi, M.D., that the record supports limiting Willard to using his hands for one-third of the day." (ECF No. 13, p. 13) (capitalization omitted).

　　　　Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

1

**I.   ANALYSIS**

**A.   BACKGROUND**

Plaintiff applied for disability benefits in June 2016, but was denied relief at the administrative level. (A.R. 1885). However, after Plaintiff filed a complaint in this Court,[1] the matter was remanded based on the ALJ's failure to adequately consider the opinion of Plaintiff's treating physician, Dr. Bichai. *Willard v. Saul*, No. 1:20-CV-00122-GSA, 2021 WL 2073737, at *9 (E.D. Cal. May 24, 2021). Among other things, Plaintiff challenged the ALJ's rejection of Dr. Bichai's assessed limitation that Plaintiff could "perform only occasional fingering and handling bilaterally." *Id.* at *6. The Court concluded that "the ALJ's explanation for departing from Dr. Bichai's opinion fell short in that it only stated that Dr. Bichai's opinion was *insufficiently* restrictive in some respects." *Id.* at *8. Accordingly, it determined that the ALJ failed to meet "the specific and legitimate reasoning standard required for rejecting a treating source opinion," and remanded the case "for the ALJ to determine whether to accept or reject Dr. Bichai's identified limitations and, if necessary, to obtain additional VE testimony on the impact of any additional limitations on Plaintiff's occupational base." *Id.* at *8, 9.

On remand, a different ALJ was assigned and held a hearing on April 5, 2022. (A.R. 1885). At this hearing, Dr. Ghazi testified as an impartial medical expert. (A.R. 681). The ALJ asked Dr. Ghazi his view of some of the functional limitations assessed by Dr. Bichai. (A.R. 685). Most pertinent, the ALJ asked Dr. Ghazi to opine about Dr. Bichai's assessment that Plaintiff was limited to occasional bilateral handling and fingering. (A.R. 687). The following exchange occurred:

> Q. Okay. So, when you were talking about the neuropathy, there was some limitations in Dr. Bichai's opinion statement about upper extremity limits. And there was a reference made to occasional bilateral handling and fingering due to fibromyalgia. Do you have an opinion about that limitation?
>
> A. That's again, not substantiated by any means. Meaning, he did not have EMG or nerve conduction studies to ascertain that.
>
> Q. And Doctor, there was an EMG study done in September of 2018, did you review that?

---

[1] The undersigned was not assigned to this case.

1  A. I didn't see that; I must have missed that.

2  Q. Okay. That was in Exhibit 20F and 23F, Page 4.

3  A. I see. Okay. So, if that's the case, then there's some reason for upper extremity syndrome.

4  Q. Okay. Do you find that having -- can you review those documents real quickly
5  and tell me if occasional handling and fingering would be supported by the results of that EMG study?

6  A. Yes. The EMG and nerve conduction studies are pretty reliable tests and we --
7  based on that, on the diagnostic evaluation.

8  Q. Okay. And so, again, the question is whether occasional handling and fingering is supported by those EMG studies?

9  A. Yes --

10  Q. Or that EMG.

11  A Correct.

12  Q. Are you saying yes?

   A. I can't think of anything else.

13
14  Q. Well, Dr. Ghazi, my question though is that I'm looking at the EMG study and
    it was basically normal, although there was some weakness noted. So again, my
    question is is that supportive of only -- of the limitation of only occasional
15  handling and fingering? So that would only be one-third of the day.

16  A Yes. That could have been also a carpal tunnel issue, which is entrapment of the
    nerve at the wrist level. And as you pointed out to the result of the EMG, the EMG
17  is not really seriously diagnostic in this case and the examiner did not rely or make
    decision on it and carpal tunnel could be an issue.
18
   Q. But that's not in the record. Correct?
19
   A. No.
20
   Q. So, we can't suppose something that's not in the record. So based on this EMG
21 study again, my question is is that supportive of limiting somebody to occasional
   handling and fingering?
22
   A. That's correct, Your Honor.
23
   Q. That didn't answer my question.
24
   A. Yes.
25
   Q. That EMG --
26
   A. Numbness -- yes. Numbness of the fingers and limitation in handling and
27 fingering and handling objects would go along with the positivity of the EMG.

28

> Q. Okay. At what level is my question? At only -- so the -- would that limit somebody to only using their hands a third of the day or would they be able to use their hands two-thirds of the day?
>
> A. Two-thirds of a day, occasionally.
>
> Q. Okay. Occasionally is one-third, frequent is two-thirds, so I need to have you clarify, Doctor.
>
> A. Yes, the latter.
>
> Q. Two-thirds?
>
> A. Two-thirds of the day.
>
> Q. Okay. Okay. And I don't think I have any other questions. Anything else, Doctor, you think is important that you need to note in the record?
>
> A. No, I can't think of anything else.

(A.R. 687-89) (minor alterations).

Thereafter, Plaintiff's attorney questioned Dr. Ghazi. Specifically, Plaintiff's attorney noted an additional EMG—this one from 2016—that reported findings "consistent with mild carpal tunnel syndrome." (A.R. 690, *see* A.R. 402). Then the following exchange occurred:

> Q. Okay. So, my question is does the presence of mild carpal tunnel syndrome along with mild and chronic bilateral C-7 radiculopathy as documented by the two EMG's, would that support decreasing use of the hands to one-third of the day?
>
> A. Yes. I should say that carpal tunnel is not as a result of nerve root compression emerging from the cervical spine. Carpal tunnel syndrome is the pressure on the medial nerve at the wrist level and has nothing to do with the cervical issues."
>
> Q. So, the cervical issues – I'm sorry, go ahead.
>
> A. Is a peripheral -- the carpal tunnel is a peripheral entrapment of the medial nerve at the wrist level. So, that does not cause any reflex or sensory alteration. At the wrist level is diagnosed by EMG, not at the cervical level.
>
> Q Okay. So, would carpal tunnel in combination with the cervical radiculopathy both work to increase the pain that Mr. Willard feels in his hands?
>
> A. It could, yes.

(A.R. 690) (minor alterations).

Ultimately, Plaintiff was once more denied relief at the administrative level. (A.R. 1885). However, the case was again remanded for further proceedings,[2] this time under a stipulation to voluntary remand pursuant to Sentence Four of 42 U.S.C. § 405(g). *Willard v. Commissioner of*

---

[2] The undersigned was not assigned to this second case either.

1 | *Social Security*, No. 1:22-CV-00995-BAM, (E.D. Cal. Nov.18, 2022) (ECF No. 14).

2   On remand, the case was assigned to the same ALJ who issued the second unfavorable

3 decision. (A.R. 666, 1904). As for Plaintiff's RFC, the ALJ concluded as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: walking and standing were limited to four hours of an eight-hour day and sitting six hours of an eight-hour day; no ladders, ropes, and scaffolds and no crawling; frequent balance; all remaining posturals at occasional; occasional right overhead reaching; **frequent bilateral handling and fingering**; frequent exposure to bright sunlight; frequent exposure to hazards; would be off task approximately three to five percent of the workday; was limited to simple tasks; occasional public interaction; no tandem tasks; no transactional interactions; occasional changes in the work setting; and no fast-paced production line work such as an assembly line.

(A.R. 1891) (emphasis added).

In formulating the RFC, the ALJ addressed Dr. Bichai's opinions but gave them no weight. (A.R. 1899). Pertinent here, the ALJ observed that Dr. Bichai "opined the claimant was capable of occasional bilateral handling, fingering, feeling, and pushing/pulling [and] [h]e noted the limitations regarding use of the upper extremities were because the claimant had fibromyalgia." (A.R. 1898). However, the ALJ rejected this, and other limitations, because Dr. Bichai "failed to cite any specific clinical findings to support his opinions," "did not perform [relevant] testing on a regular basis," did "not specialize in treating musculoskeletal, neurological, or mental health conditions," and "contradicted himself in an earlier opinion." (A.R. 1899).

Additionally, the ALJ addressed Dr. Ghazi's opinion, giving it partial weight:

> I give Dr. Ghazi's opinion partial weight to the extent **I agree the claimant was limited to** standing/walking four hours in an eight-hour workday with **frequent bilateral handling/fingering**. However, I find the claimant is slightly more limited than opined by Dr. Ghazi and include a limitation to occasional right overhead reaching, as well as additional postural and environmental limitations. I also considered more medical evidence than the doctor did as well as considered the inconsistencies in the record in formulating the above residual functional capacity assessment.

(A.R. 1901) (emphasis added). Regarding Dr. Ghazi's testimony regarding the EMG studies, the ALJ stated:

> When asked whether he agreed with a limitation of occasional bilateral

> handling/fingering as opined by Dr. Bichai based on a diagnosis of fibromyalgia, he noted that this was not substantiated by any means and noted a lack of an EMG (electrodiagnostic/nerve conduction studies). However, when directed to an EMG study from September 2018 (Ex 23F/4), Dr. Ghazi stated he did not see that when he reviewed the records. After taking a moment to review the EMG study, he stated that the EMG would support a limitation to frequent bilateral handling/fingering (2/3) of the day.

(A.R. 1900-01). However, the ALJ failed to address Dr. Ghazi's subsequent testimony confirming that "the presence of mild carpal tunnel syndrome along with mild and chronic bilateral C-7 radiculopathy as documented by the two EMG's, would [] support decreasing use of the hands to one-third of the day." (A.R. 690).

Ultimately, the ALJ denied Plaintiff's application, and the matter is now before the Court. (A.R. 1904).

### B. LEGAL STANDARDS

According to the legal standards that applied to this claim at this time, "[t]he opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. [But] [t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the

decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

Lastly, as Defendant's argument is based on harmless error, the Court notes that "harmless error applies in the Social Security context." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Even legal error is subject to a harmless error analysis, and a decision will be upheld where the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citation and quotation marks omitted).

### C.   ANALYSIS

Plaintiff argues that the ALJ erred by failing to address Dr. Ghazi's testimony affirming that "the presence of mild carpal tunnel syndrome along with mild and chronic bilateral C-7 radiculopathy as documented by the two EMG's, would [] support decreasing use of the hands to one-third of the day." (A.R. 690).

In response, the Commissioner argues that, "[a]lthough the ALJ did not explicitly mention Dr. Ghazi's later testimony, when considering the decision as a whole, there is no error that warrants remand." (ECF No. 17, p. 7). First, the Commissioner contends that Dr. Ghazi's testimony that Plaintiff could only occasionally use his hands was premised on Plaintiff's attorney's positing about the presence of mild carpal tunnel syndrome; however, the ALJ never found "carpal tunnel syndrome to be a severe, or even medically determinable, impairment." (*Id.*). Moreover, other than the 2016 EMG "there is no other mention or diagnosis of carpal tunnel syndrome in the record during the relevant period" or much other evidence indicating that Plaintiff had problems with his hands. (*Id.*). Second, Defendant notes that, because the ALJ rejected Dr. Bichai's opinions that Plaintiff could only occasionally use his hands, it could be inferred that he would likewise reject any opinion of occasional hand use by Dr. Ghazi. (*Id.* at 8).

1  Upon consideration, the Court concludes that the ALJ erred by not addressing Dr. Ghazi's testimony, following review of both EMG studies, that Plaintiff should be limited to occasional use of his hands, including the following question and answer:

> Q. Okay. So, my question is does the presence of mild carpal tunnel syndrome along with mild and chronic bilateral C-7 radiculopathy as documented by the two EMG's, would that support decreasing use of the hands to one-third of the day?
>
> A. Yes.

(A.R. 690). This testimony undermines the ALJ's summary that Dr. Ghazi "stated that the EMG would support a limitation to frequent bilateral handling/fingering (2/3 of the day)." (A.R. 1901). Moreover, Dr. Ghazi's testimony about both of the EMG studies calls into question the ALJ's repeated finding that the EMG studies did not support a limitation to occasional fingering. For example, the ALJ's opinion states "the results of electrodiagnostic testing of the upper extremities did not substantially support the alleged degree of limitations regarding use of the hands," (A.R. 1892), and "the claimant's . . . diagnostic tests and examination results do not appear to be commensurate with the extent of symptomology alleged." (A.R. 1894). But Dr. Ghazi's testimony is inconsistent with this conclusion. Again, after viewing the EMG results from September 2018, Dr. Ghazi repeatedly stated that it would indeed change his opinion as to whether Dr. Bichai's limitation to occasional handling and fingering was supported. (*See* A.R. 688-89). Although Dr. Ghazi later appeared to return to the two-thirds limitation, he was then confronted by Plaintiff's attorney with another EMG from 2016. (A.R. 689). Dr. Ghazi then agreed that what was "documented by the two EMGs" would support decreasing Plaintiff's use of his hands to one-third of the day. (A.R. 690).

Nor does the Court find the error harmless on the basis that the ALJ did not separately find that carpal tunnel syndrome was a severe impairment. Notably, the 2016 EMG results reported as follows:

> 1) Sensory and motor studies show mild Median entrapment neuropathy in both hands consistent with mild Carpal Tunnel Syndrome. There is also mild slowing in both Tibial nerves.
> 2) H wave are normal.
> 3) Finding on needle EMG corroborated the clinical impression of ***Chronic Radiculopathy in right L4 and L5 lumbar roots. Also, there is chronic***

*cervical radiculopathy at Right C6 and bilateral C7 roots.*

(A.R. 402).

The Court also cannot say that the error was harmless given that, as Plaintiff points out, and as Defendant does not contest, all of the jobs that the ALJ identified Plaintiff as capable of performing would be incompatible with a limitation to occasional hand use.[3] (ECF No. 13, p. 19). Thus, assuming that the ALJ had considered and decided to credit Dr. Ghazi's limitation of occasional hand use, Plaintiff would be prejudiced because he cannot perform any of the jobs identified for him in the opinion. Accordingly, it cannot be said that such error is inconsequential to the ultimate nondisability determination.

Lastly, the ALJ's rejection of Dr. Bichai's limitation to occasional hand use does not warrant a finding of harmless error. Among other things, the ALJ gave no weight to Dr. Bichai's opinions because he failed to support his opinions with citation to specific clinical findings, the absence of regular testing, and his lack of specialty in musculoskeletal and neurological conditions. (A.R. 1899). Here, Dr. Ghazi opinion was based on specific EMG test results and he is an orthopedic surgeon. Dr. Ghazi's testimony thus calls into question the ALJ's basis for rejecting Dr. Bichai's opinion. In other words, the ALJ did not provide independent reasons for rejecting Dr. Bichai's opinion that would also provide a basis to reject Dr. Ghazi's opinion.

## II.   REMEDY

The decision whether to remand for further proceedings or for payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). A case may be remanded under the so called "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

---

[3] These jobs were Mail Clerk (DOT 209.687-026) (requiring frequent handling and fingering); Storage Facility Rental Clerk (DOT 295.367-026) (requiring frequent handling) (corrected from DOT code 295.267-026, which appears to be a typographical error as there is no such code), and Routing Clerk (DOT 222.687-022) (requiring frequent handling and fingering). (A.R. 1903).

1  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met,
2  the Court may still remand when "an evaluation of the record as a whole creates serious doubt
3  that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the
4  "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *See*
5  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

6    Here, the Court is troubled that this case has already been remanded twice before
7  concerning the issue of medical opinion, resulting in Plaintiff's application being ultimately left
8  undecided after nearly nine years. Indeed, the first remand was on the basis that the ALJ failed to
9  provide a sufficient basis to reject the same medical limitation at issue in this appeal, *i.e.*, Dr.
10 Bichai's opinion that Plaintiff should be limited to occasional, rather than frequent, handling and
11 fingering. With that context in mind, the ALJ's failure to include and address testimony from Dr.
12 Ghazi supporting that same limitation is especially troubling.

13   Nevertheless, the Court will grant Plaintiff's requested remedy for a "remand for proper
14 consideration of Dr. Ghazi's medical opinion that the record supports decreasing Willard's ability
15 to use his hands to one-third of the day." (ECF No. 13, p. 21). However, any opinion must
16 neutrally and fairly assess Dr. Ghazi's medical opinion (as well as any other opinion that is
17 considered).

18 **III.   CONCLUSION AND ORDER**

19   Based on the above reasons, the decision of the Commissioner of Social Security is
20 reversed and remanded for further proceedings consistent with this order, including to properly
21 consider whether the record supports a limitation of occasional, rather than frequent, fingering
22 and handling in light of Dr. Ghazi's testimony.

23   The Clerk of Court is directed to enter judgment in favor of the Plaintiff and to close this
24 case.
   IT IS SO ORDERED.
25

26  Dated: **April 8, 2025**                          /s/ Erica P. Grosjean
27                                                    UNITED STATES MAGISTRATE JUDGE
28

10